# ROBERT A. CAMPBELL, Administrator, Respondent, v. WILLIAM R. HAYDEN et al., Appellants.

**St. Louis Court of Appeals.    Argued and Submitted February 7, 1912.    Opinion Filed March 5, 1912.**

1. **NEW TRIAL: No Reason Assigned: Review: Appellate Practice.**  On appeal from an order sustaining, without assignment of reason, a motion for a new trial, one of the grounds of which was that the verdict was against the weight of the evidence, the court will examine the whole record to see whether the state of the evidence authorized such action.

2. **EXECUTORS AND ADMINISTRATORS: Gifts: Action for Money Had and Received: Sufficiency of Evidence.**  Evidence, in an action by an administrator for money turned over by decedent to defendants, *held*, while authorizing a finding to the contrary, to authorize an inference by the jury, that such turning over was not intended by decedent nor treated by defendants as absolute, either under a contract for care of decedent by defendants, or as a gift *inter vivos*.

3. **NEW TRIAL: Verdict Against Weight of Evidence: Review: Appellate Practice.**  Where there is evidence authorizing a verdict either way, depending on the credit given witnesses, the granting of a new trial on the ground that the verdict is contrary to the weight of the evidence is a discretionary matter, and will not be disturbed on appeal.

4. **EVIDENCE: Expert Testimony: Opinion of Physician.**  It being within the province of a physician to testify to the condition, the objective symptoms, of a deceased person when he attended him, it was competent for the physician to testify, after stating that decedent's conversation, by reason of his malady, was generally confined to "Yes" or "No," that his condition was one "in which the mind was not impaired but the way of expressing was the impairment."

5. **————: Declarations of Deceased Person: Executors and Administrators.**  In an action by an administrator for money turned over by decedent to defendants, the issue being whether he had given it to them absolutely or under a contract whereby they were to take care of him, or whether they were merely to take care of it for him, defendants were entitled to introduce the testimony of decedent's nurse as to what he said to her about giving his property to them.

6. **DEPOSITIONS: Objections to Form of Question.** Under section 6413, Revised Statutes 1909, objections to the form of questions asked in a deposition must be made at the time the deposition is taken.

7. **NEW TRIAL: Sympathy, Passion and Prejudice of Jury: Review: Appellate Practice.** By reason of the better position of the trial court to determine whether or not a jury was swayed by sympathy, passion or prejudice, its action in sustaining a motion for a new trial on one of these grounds will not be disturbed on appeal.

**NORTONI, J., concurs in result.**

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED AND REMANDED.

*Pearson & Pearson* and *J. H. Blair* for appellants.

(1) When a trial court sustains a motion for new trial generally and gives no specific reason for its action, the appellate court is driven to take into consideration all the grounds assigned in the motion, and if any one of them is sufficient to justify the action of the court, to affirm the judgment. Fink v. McCue, 123 Mo. App. 313; Roll v. Bank, 167 Mo. 406; Ordelheide v. Land Co., 208 Mo. 239; Stoner v. Royar, 200 Mo. 444; Pierce v. Lee, 197 Mo. 480; Lead & Zinc Co. v. Webster, 193 Mo. 351. (2) It is suggested that it might be presumed, that the trial court in the case at bar based its finding on all the reasons set forth in the motion for a new trial; and that would include the reason that the verdict was against the evidence. Such presumption, would also include the twenty-sixth reason set forth in the motion for new trial, to-wit: "Because there is no evidence to authorize a verdict for defendants;" then there would be contradictory reasons assumed to have been had in his own mind by the trial judge for granting a new trial, and, this would not be allowed by the appellate court, to stand. Crawford v. Stock Yards Co., 215 Mo. 394; Pierce v. Lee,

197 Mo. 480. Again, there is never a presumption in favor of the action of a trial court in a neglect of duty, or in a willful violation of the law, either one of which works an injustice to appellant. Stoner v. Royar, 200 Mo. 444; Pierce v. Lee, 197 Mo. 480; Roll v. Bank, 167 Mo. 406. (3) The right of appeal from an order granting new trial, is a substantial right, which the statute gives the losing party, and the trial court has no right either by neglect of its duty, or by willful violation of the law, to jeopardize this right, or deprive him of it. Ordelheide v. Land Co., 208 Mo. 239. (4) Under no circumstances will the appellate court presume, that the reason that the trial court granted a new trial, and sustain the order of the court granting a new trial, unless it finds from the entire record, that there was conflicting testimony, given on the part of the plaintiffs and the defendants. This could not be determined, without a careful examination of the entire record. Schumacher v. Dist. Co., 142 Mo. App. 343; Dickmann v. Hesspos, 141 Mo. App. 119; Sharp v. Odium, 121 Mo. App. 565; Bank v. Wood, 124 Mo. 72; Bank v. Huters, 87 Mo. App. 534. Appellants' contention, in the case at bar, is that there is no conflicting testimony on the material issues raised by the pleadings and the evidence in this case; and, that the reasons for the court granting a new trial in the case, was upon other grounds than that of the weight of testimony.

*Ball & Ball* and *David A. Ball* for respondents.

(1) The granting of a new trial rests within the sound discretion of the court. Farrell v. Transit Co., 103 Mo. App. 454; Coleman v. Cole, 96 Mo. App. 22; Roden v. Transit Co., 207 Mo. 392; McCarty v. Transit Co., 192 Mo. 396; Gould v. St. John, 207 Mo. 619. (2) The court has a right to grant a new trial in either a law or equity case if it is satisfied the verdict or finding is against the weight of the evidence. Hurley v. Kennally, 186 Mo. 225. (3) A trial court has

large discretion to grant new trials to accomplish jus-
tice, and the court's action will not be disturbed on
appeal unless it appears that it used its discretionary
power in an arbitrary or wrongful manner. Cook v.
Railroad, 56 Mo. 380; Taylor v. Railroad, 163 Mo. 183;
Lovenhart v. Railroad, 190 Mo. 342.

REYNOLDS, P. J.—This is an action instituted
by the administrator of one Absalom T. Hays against
the defendants to recover $7114.19 and interest, al-
leged by plaintiff to be of the estate of his intestate.
The answer of defendants, admitting that they had re-
ceived from Absalom T. Hays, in his lifetime, the
principal sum above specified, claimed that under and
by virtue of a contract between them and the dece-
dent, by which they were to care for, support and
maintain him as long as he should live, he was to turn
over to them all of his property and estate, and that
in compliance with that agreement he had given and
turned over to them the money specified in the peti-
tion, and that in order to enable them to collect this
money, which was in a bank in the state of Montana,
he had given them a power of attorney under which
they had collected the money; that it was their own,
held by them under and by virtue of the contract and
understanding above mentioned, which they allege
they had fully carried out and had nursed, cared for,
supported and maintained the decedent for the remain-
der of his life and until his death. Originally defend-
ants interposed a counterclaim, but abandoned it at
the trial.

The reply, admitting that defendants had cared
for the decedent, avers that the money collected by
them under the power of attorney was collected not
in their own right as owners but that defendants col-
lected that sum for the decedent and were accountable
for it to his administrator.

On the trial before the court and a jury a vast

amount of testimony was introduced by the respective parties to sustain their several contentions.

It appears that the decedent, an old man over seventy, and the uncle of defendants, was stricken with paralysis while in Montana. More accurately, as described by one of the physicians who attended him when he was first stricken, his affliction was apoplexy, commonly called paralysis. He was at first completely paralyzed but afterwards recovered the use of his limbs on one side. As described by another of the physicians, who had also attended him when first stricken, while decedent was at first completely helpless, later along he could move his arm and leg and got so he could say several words; could say ''Yes'' and ''No,'' and when he was angry he would swear. Beyond this, while he could say a few words, he could not carry on a connected conversation understandingly. His hearing appears to have been unimpaired and persons carried on conversations with him by asking him questions which he would answer by ''Yes'' or ''No.'' He was not afflicted mentally. According to his physicians his mental condition was all right; it was an impairment of the mind acting on the body; persons so afflicted can think well enough but when it comes to expression, they become ''muddled'' so that they cannot convey their ideas to others. ''That is not a mental trait, it is a material trait,'' said one of these physicians. He remained in this condition until he died in Pike county, this state, some eighteen months after his removal to this state. While in this condition and in Montana and not in the presence of his nephews, these defendants, he expressed his intention to a lady who was nursing him and in whose hospital he was then confined, of giving all his property to these nephews. They removed him from Montana to Pike county, in this state. Sometime after his arrival in Pike county, he executed one or more powers of attorney, authorizing these two defendants to col-

lect all his moneys, take charge of all his property and transact business for him. When he was brought back to Missouri and while confined to his bed or his room at the house of one or the other of the defendants, in answer to questions of various parties as to whether it was a fact that he had given all his property to these two defendants, he very emphatically indicated that he had done so, doing this both by word, that is answering "Yes," to the question and by raising his hand and indicating by uplifting two of his fingers that he had executed the powers of attorney in favor of both and had given all his property to both.

There was testimony, however, on behalf of plaintiff tending to show that the defendants themselves had acted as to this money and property as if it still belonged to their uncle; also testimony tending to show that in drawing on the money after it was in bank they had drawn on it as under the power of attorney and not as in their own right, and that they or at least one of them, had reported it to plaintiff as of the estate of the decedent when plaintiff, as administrator, was listing the estate.

It cannot therefore be successfully maintained that the evidence in the case was all one way and that it was not susceptible of two inferences, one in favor of defendants and sustaining their contention that the turning over of the property was absolute, either under contract or as a gift in the lifetime of the decedent; the other testimony from which a jury might infer that it was not either so intended or so treated by defendants themselves. It may be true that the testimony as to this latter phase of the case is not as strong and direct as the testimony sustaining the other theory, but it cannot be said that the testimony beyond all question was of such a character as to inevitably lead to but one conclusion.

164 App.—17

After being instructed by the court, the jury re-turned a verdict in favor of defendants, whereupon plaintiff interposed a motion for new trial, assigning thirty-three grounds why a new trial should be granted. The court sustained this motion and granted a new trial, without specifying upon which of the thirty-three grounds the new trial was granted. From this order granting a new trial, defendants have duly perfected their appeal to this court.

It is earnestly contended by the learned counsel for the appellants, that when the trial court either failed or neglected to assign reasons for granting a new trial, the burden is upon the appellate court to review the whole record and determine for itself upon all the evidence as to whether or not any one of the grounds assigned in the motion for new trial was suffi-cient or would justify the court in sustaining the mo-tion and granting a new trial, and this, say counsel, includes the ground that the judgment was against the weight of the evidence, counsel conceding that where one of the grounds assigned is that the verdict is against the weight of the evidence, that the action of the court in sustaining a motion for new trial will not be disturbed, unless the appellate court finds from the entire record that there was no conflicting testi-mony. It is further earnestly contended that an exam-ination of the entire record will satisfy this court that there is no conflicting testimony on the material issues raised by the pleadings and the evidence in the case, and that the reasons for the court granting a new trial were upon other grounds than that of the weight of the testimony, as to which other grounds, it is claimed, there was no basis for the action of the trial court. We agree with those learned counsel on the proposi-tion that under this assignment, that the verdict is against the weight of the evidence, it is our duty to examine the whole record. That proposition is fully

sustained by the decisions of our Supreme Court in
Pierce v. Lee, 197 Mo. 480, 95 S. W. 426; Ordelheide
v. Berger Land Co., 208 Mo. 239, 106 S. W. 620, and
cases there cited, as well as in many other decisions of
our Supreme Court. In the Ordelheide case it is dis-
tinctly said (l. c. 244) that the right of appeal from
an order granting a first new trial would amount to
nothing if the action of the trial court was not subject
to review in the appellate court.

With this proposition in mind, we have examined
with great attention the entire testimony in this case
as abstracted. In point of fact the "abstract," so-
called, is almost a complete and literal transcript of all
the testimony as given in the case. We have given a
very brief synopsis of its tendency and general effect.
As appears by that summary, the testimony was of
such a character that it was peculiarly within the prov-
ince of the jury to draw one or the other inference
from it; to determine on that evidence for one or the
other party, dependent on the weight that the jury
gave to the testimony, not measured by the number of
witnesses and by what they said, but by their de-
meanor, the impression they made upon the jury as
to their reliability—in short, the credibility the jury
should give to their testimony. This is clearly and en-
tirely for the determination of the jury in the first
instance. But it is here that the discretionary power
of the trial judge intervenes. He has practically an
uncontrollable supervision of a verdict in such a case.
We know of no well considered case in this state in
which the appellate court has held that it will interfere
with the action of the trial court in granting a new
trial, on the ground that the verdict is against the
weight of the evidence, if that is one of the grounds
stated in the motion, provided the appellate court is
satisfied that the evidence did not inevitably warrant
but one conclusion. As that ground is one of the thirty-
three assigned in this very voluminous motion for a

new trial, we are unable, on a reading of the whole record, to say that the learned trial court erred in setting aside the verdict in this case on that ground.

As to the other thirty-two grounds alleged in the motion for new trial, all but one of them going to the admission and exclusion of testimony and to the giving and refusal of instructions, a careful consideration of the rulings and of the action of the trial court fails to show any error to the prejudice of plaintiff. In point of fact, if there is any criticism to be made on the action of the trial court in the exclusion of testimony, it is not improper to say that it appears that the court had exercised its power in the exclusion of testimony more favorably toward plaintiff than toward defendants. For instance, in the action of the trial court in excluding certain answers in the depositions of several of the witnesses for defendants, we think that whatever error there was, was against defendants and not against plaintiff. To illustrate, in the cross-examination of Dr. Wilson, when describing the condition of the decedent, after stating that the conversation carried on between the decedent and other persons was confined generally on his part to saying "Yes" or "No," the witness stated that Miss Stoner, the lady in whose hospital the decedent was confined when he was first stricken in Montana, was with him all the time and that she "had the knack of getting on to what he wanted;" that she had become so accustomed to him that she could intuitively guess at what he wanted and ask him if that was it and he would assent or not. The physician then stated this: "It was a condition in which the mind was not impaired but the way of expressing was the impairment." This sentence, together with what we have stated as immediately preceding it, was stricken out on objection of counsel for plaintiff. We think that was error. It was within the province of this physician to state the condition of his patient, the objective

symptoms, and this sentence quoted should not have
been excluded. Then again, in the deposition of Miss
Stoner, the court excluded her answer to a question
as to what the decedent had told her about giving his
property to his two nephews, who came out to Montana
to see him. The objection to the question was sus-
tained and the answer was excluded. We think this
was an incorrect ruling. Defendants were entitled to
the question and the answer. Further along this wit-
ness was asked this question, ''Now, he said he had
given his property to these two nephews in considera-
tion that they were going to give him a home and care
for him the balance of his life?'' To which the wit-
ness answered, ''I asked him that and he said, 'Yes.' ''
Then again this same witness was asked, ''What, if
anything, did Absalom T. Hays tell you as to having
made an agreement with his two nephews that came
here relating to giving them his property for taking
care of him the balance of his life?'' This was ob-
jected to as leading and suggestive and the objection
sustained. These questions were, to some extent, a rep-
etition of what this witness had previously testified.
We think this objection should have been overruled. It
is to be remembered that these questions were asked
in the deposition and the ground of the objection on
which they were excluded apparently is that they were
leading. These depositions were taken at the instance
of defendants, and plaintiff was represented at the
taking of them by counsel. We do not understand
that these objections were made at the time the depo-
sitions were taken, but appear to have been made when
the depositions were presented in order to be read at
the trial. We are not able to determine with accuracy
as to when these objections were made, but if they
were not made at the time the depositions were taken
and before they were presented to the court to be read
in evidence, they should not have been sustained. Un-
der section 6413, Revised Statutes 1909, the only

ground of objection which the court could sustain when the objection was first made in the court, would be to their competency or relevancy. Objections to the form of question must be made at the time the depositions are taken. [Warlick v. Peterson, 58 Mo. 408; Patton v. St. Louis & S. F. R. Co., 87 Mo. 117; Williamson v. Brown, 195 Mo. 313, 93 S. W. 791.]

There is one other assignment of error in the motion for new trial which is also so entirely within the discretion of the trial court that we would be very reluctant to disturb its order granting a new trial, if we understood that it entered into the consideration of the court in sustaining that motion. This assignment is, that the verdict returned is the result of "sympathy, passion and prejudice on the part of the jury." We have no means whatever of determining this on the present, or, generally, on any record. The mere fact that the verdict was for the defendants on the evidence in the case by no means sustains that assignment. But the court presiding at the trial, thoroughly familiar with the proceedings at the trial, the manner of its conduct, the demeanor of the jury and of counsel, is in so much better position to determine on the fact of prejudice and bias, than an appellate court can possibly be, that we would be justified in saying that on this ground, in addition to the ground as to the weight of the evidence, we would feel compelled to sustain the action of the trial court in granting a new trial. On consideration of the whole case, we do not feel warranted in disturbing the action of the circuit court of Pike county in sustaining the motion for a new trial. Its judgment to that effect is affirmed and the cause remanded for further proceedings in due course of law. *Caulfield, J.,* concurs. *Nortoni, J.,* concurs in the result for the reason only that there is substantial evidence in the record in support of the verdict for defendant, and this being true the appellate court is precluded from reviewing the action

of the trial court in granting one new trial on the ground that the verdict is against the weight of the evidence.

